UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PH INTERNATIONAL TRADING CORP., D/B/A
HANA K,

                              Plaintiff,

    -v-

NORDSTROM, INC.,

                              Defendant.

Case No. 07-CV-10680 (KMK)

OPINION AND ORDER

---

Appearances:

Matthew Alan Blank, Esq.
West Nyack, NY
*Counsel for Plaintiff*

Allen J. Kozupsky, Esq.
Somers, NY
*Counsel for Plaintiff*

Mark Steven Olinsky, Esq.
Marc David Youngelson, Esq.
Sills Cummis & Gross, P.C.
Newark, NJ
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

      Plaintiff PH International Trading Corp., D/B/A Hanna K, commenced this action in New York Supreme Court against Defendant Nordstrom, Inc. by filing a Summons with Notice on July 24, 2006. Plaintiff thereafter served its Summons with Notice on November 2, 2007. Defendant removed the action to this Court on November 29, 2007. Defendant has filed the instant motion to dismiss this action, arguing that Plaintiff failed to timely serve Defendant. Plaintiff has filed a cross-motion asking the Court to deem Plaintiff's service proper *nunc pro*

*tunc*.[1]  For the reasons stated below, Defendant's motion to dismiss is denied and Plaintiff's motion is granted.

## I.  Background

### A. Factual Background

#### 1. Factual Allegations in Plaintiff's Complaint

The Complaint, which the Court accepts as true at the pleading stage, alleges the facts set forth below.

Plaintiff is a manufacturer and distributor of leather, fur, and shearling outerwear. (Compl. ¶ 1.)  Defendant is a retailer of goods, including leather, fur, and shearling outerwear. (*Id*. ¶ 2.)  Between 1996 and 2002, Plaintiff designed and manufactured high quality leather, fur, and shearling outerwear specifically for sale by Defendant.  (*Id*. ¶ 8.)

During the relevant time period, Rick Boniakowski ("Boniakowski") acted as an officer, agent, buyer, and/or employee for Defendant.  (*Id*. ¶ 7.)  In that capacity, Boniakowski was authorized to place orders on behalf of Defendant for certain merchandise, including leather and shearling garments.  (*Id*.)  In 2002, Boniakowski, on Defendant's behalf, placed an order with Plaintiff for certain merchandise, including leather, fur, and shearling garments, in the same manner that he had in the past placed orders with Plaintiff on behalf of Defendant.  (*Id*. ¶¶ 11-12.)  Plaintiff manufactured the garments for Defendant in accordance with Boniakowski's 2002 order.  (*Id*. ¶ 13.)  After the merchandise had been manufactured, Defendant canceled Boniakowski's 2002 order.  (*Id*. ¶ 14.)  Plaintiff alleges that the cancellation was not due to any

---

[1] As the Court stated in its Memorandum Endorsement of June 2, 2008, pursuant to Plaintiff's request, the Court construes Plaintiff's Response in Opposition to Defendant's Motion as a cross-motion to deem service of its Complaint proper *nunc pro tunc*. (Dkt. No. 16.)

fault by Plaintiff and that Defendant acted willfully and without cause, reason, or provocation in cancelling the order. (*Id*. ¶¶ 15-16.) Cancellation of Defendant's order, which was worth $1,750,000.00, allegedly caused Plaintiff damages in excess of $1,750,000.00. (*Id*. ¶¶ 17-18.)

<u>2. Plaintiff's Factual Allegations about the Commencement of this Action</u>

Plaintiff, in its Memorandum in Opposition to Defendant's Motion to Dismiss and supporting documents, claims that its commencement of this action occurred under the following circumstances.

From the time Defendant canceled its order in 2002 until late 2004, Plaintiff's President, Pierre Lang ("Lang"), attempted to resolve the matter with Defendant. (Aff. of Pierre Lang ("Lang Aff.") ¶ 7.) In late 2004, Plaintiff retained Errol Blank ("E. Blank") as Counsel, and E. Blank thereafter negotiated on Plaintiff's behalf with Defendant. (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Mem.") 3; Aff. of Matthew Blank ("M. Blank Aff.") ¶ 3.) In August 2005, E. Blank was diagnosed with cancer, and thereafter, Lang attempted to negotiate directly with Defendant's CEO, Blake Nordstrom. (M. Blank Aff. ¶ 4; Lang Aff. ¶ 8.) In July 2006, E. Blank passed away, and his son, Matthew Blank ("M. Blank"), who was also an attorney, agreed that to protect Plaintiff's claim from becoming time-barred he would commence an action against Defendant and then turn the case over to a litigating attorney. (Lang Aff. ¶ 9; M. Blank Aff. ¶¶ 4-7.)

M. Blank commenced this action by filing a Summons with Notice in Westchester County Supreme Court on July 24, 2006. (M. Blank Aff. ¶¶ 6-8.) With Plaintiff's permission, M. Blank then turned the file over to Moneesh K. Bakshi ("Bakshi"), who agreed to serve process and otherwise take the case over from M. Blank. (Lang Aff. ¶ 10; M. Blank Aff. ¶ 8.) A

month or so later, Bakshi notified M. Blank and Plaintiff that he had effectuated service of process upon Defendant. (M. Blank Aff. ¶ 8; Lang Aff. ¶ 10.) Over the following months, Bakshi continued to assure Plaintiff that the case was being handled and was moving along in proper fashion. (M. Blank Aff. ¶ 8; Lang Aff. ¶ 11.) At one point, Bakshi even requested from Lang documentation relating to the case, which Lang supplied. (Lang Aff. ¶ 11.)

During the summer of 2007, Bakshi did not return calls from Plaintiff or M. Blank. (M. Blank Aff. ¶ 9; Lang Aff. ¶ 11.) Concerned about the state of this action, Plaintiff, through M. Blank, contacted its current Counsel, Allen Kozupsky ("Kozupsky"), in August 2007. (M. Blank Aff. ¶ 9.) Upon investigation, Kozupsky learned that contrary to Bakshi's assurances, Bakshi had never served process on Defendant. (Pl.'s Mem. 4; M. Blank Aff. ¶ 10.) Thereafter, on September 17, 2007, Kozupsky (hereinafter "Plaintiff's Counsel") was retained to represent Plaintiff in this action. (Lang Aff. ¶¶ 12-13.) Plaintiff's Counsel thereafter attempted to obtain the case file from Bakshi, but Bakshi refused to cooperate for one month. (Lang Aff. ¶ 13.) Bakshi eventually turned over the case file to Plaintiff's Counsel, after Plaintiff threatened to file a complaint against Bakshi with the Bar Association. (Pl.'s Mem. 4.) One week later, on November 2, 2007, Plaintiff served process on Defendant. (*Id.*)

B. Procedural History

As discussed above, Plaintiff commenced this suit in Westchester County Supreme Court by filing a Summons with Notice in lieu of a Complaint on July 24, 2006. (Def.'s Ex. A.)[2] The

---

[2] Defendant has submitted two sets of exhibits in support of its motion: the first set, dated April 3, 2008, accompanied its Memorandum in Support of its Motion to Dismiss, and the second set, dated June 6, 2008, accompanied its Reply Memorandum. The Court herein refers to Defendant's first set of exhibits as "Defendant's Exhibits" ("Def.'s Exs."). The Court does not refer herein to the second set of Defendant's exhibits, though the Court has reviewed and

Summons with Notice was not served on Defendant until November 2, 2007, more than fifteen months after the initial commencement of the suit.  (Def.'s Ex. B.)  On November 29, 2007, Defendant timely removed the action to this Court.  (Def.'s Ex. C.)  Thereafter, on January 7, 2008, Plaintiff electronically served its Complaint on Defendant.  (Def.'s Ex. D.)

Defendant filed the instant motion on June 6, 2008, seeking dismissal of Plaintiff's Complaint for failure to timely serve its Summons with Notice under N.Y. C.P.L.R. § 306-b.  (Dkt. No. 17.)  As the Court noted in its Memorandum Endorsement of June 2, 2008, the Court has construed Plaintiff's Response in Opposition to Defendant's Motion to Dismiss as a cross-motion to deem service proper *nunc pro tunc*.  (Dkt. No. 16.)

## II. Discussion

### A. Standard of Review Under Federal Rule of Civil Procedure (12)(b)(5)

Defendant's motion is styled as a motion to dismiss the action as time barred pursuant to Federal Rule of Procedure 12(b)(6).  However, as the crux of Defendant's argument centers around whether service of process may be deemed proper under N.Y. C.P.L.R. § 306-b, this motion is properly considered as a motion to dismiss the Complaint for insufficient service of process pursuant to Federal Rule of Procedure 12(b)(5).

"In deciding a Rule 12(b)(5) motion, a court must look to matters outside the complaint to determine what steps, if any, the plaintiff took to effect service."  *J.G. v. Bd. of Educ. of Briarcliff Manor Union Free Sch. Dist.*, No. 07-CV-7245, 2008 WL 3843523, at *2 (S.D.N.Y. Aug. 14, 2008) (quoting *C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 427 (S.D.N.Y. 2005) (internal quotation marks omitted)); *see also Darden v.*

---

considered them.

*DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). "The plaintiff bears the burden of proving adequate service." *J.G.*, 2008 WL 3843523, at *2; *see also Gessler v. Sobieski Destylarnia S.A.*, No. 06-CV-6510, 2007 WL 1295671, at *2 (S.D.N.Y. May 3, 2007) ("The burden of proof in order to establish jurisdiction lies with the party invoking that jurisdiction." (citing *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006)). "A court may, on a [Rule 12(b)(5)] motion to dismiss, 'consider affidavits and documents submitted by the parties without converting the motion into one for summary judgment under Rule 56." *Gessler*, 2007 WL 1295671, at *2 (quoting *Credit Suisse Sec. (USA) LLC v. Hilliard*, 469 F. Supp. 2d 103, 106 (S.D.N.Y. 2007)).

B. The Interest of Justice

Because Plaintiff served process on Defendant prior to removal, "the propriety of service must be determined by reference to state law." *Zeballos v. Tan*, No. 06-CV-1268, 2006 WL 1975995, at *6 (S.D.N.Y. July 10, 2006); *see also Leadsinger, Inc. v. Cole*, No. 05-CV-5606, 2006 WL 2266312, at *10 (S.D.N.Y. Aug. 4, 2006) (holding that state law applies to issues pertaining to the service of process prior to removal). It is undisputed that Plaintiff failed to timely serve its Summons with Notice within 120 days of its filing in New York Supreme Court, as it was required to do under N.Y. C.P.L.R. § 306-b. (Pl.'s Mem. 6.) Plaintiff argues, however, that this failure is not fatal to its case, as Section 306-b accords courts discretion to extend the time for service "in the interest of justice."[3]  N.Y. C.P.L.R. § 306-b; *see also Leader v. Maroney,*

---

[3] A court may also extend the time for service "upon good cause shown." N.Y. C.P.L.R. § 306-b; *see also Leader v. Maroney, Ponzini & Spencer*, 761 N.E.2d 1018, 1021 (N.Y. 2001); *Wilkins v. Burgess*, 807 N.Y.S.2d 574, 575 (App. Div. 2006). Yet, to meet the "good cause" standard, unlike the "interest of justice" standard, a plaintiff must show "reasonable diligence" in attempting to effect proper service on the defendant. *Wilkins*, 807 N.Y.S.2d at 575 (refusing to

*Ponzini & Spencer*, 761 N.E.2d 1018, 1021 (N.Y. 2001) (holding that courts have discretion to decide whether to extend time to serve for good cause shown or in the interest of justice); *Abu-Aqlein v. El-Jamal*, 844 N.Y.S.2d 385, 386 (App. Div. 2007) (affirming extension of time for service based on the interest of justice); *Hidehiko Yamamoto v. Kyoko Yamamoto*, 842 N.Y.S.2d 10, 11 (App. Div. 2007) (same).

In considering whether to extend the time for service in the "interest of justice" under Section 306-b, courts are to engage in a "careful judicial analysis of the factual setting of the case and a balancing of the competing interests presented by the parties." *Leader*, 761 N.E.2d at 1025. Courts may consider "diligence, or lack thereof, along with any other relevant factor in making its determination, including expiration of the Statute of Limitations, the meritorious nature of the cause of action, the length of delay in service, the promptness of a plaintiff's request for the extension of time, and prejudice to defendant." *Id.*; *see also Cooper v. N.Y. City Bd. of Educ.*, 864 N.Y.S.2d 317, 317 (App. Div. 2008) (considering "all relevant factors, including, inter alia, the expiration of the statute of limitations prior to the plaintiffs' discovery that . . . service . . . was defective, and the lack of identified prejudice to th[e] defendant from the delay" in reversing the lower court's decision to deny extension of time to serve); *Brown v. Wilson Farms, Inc.*, 861 N.Y.S.2d 878, 878-79 (App. Div. 2008) (considering, inter alia, the circumstances surrounding plaintiff's failure to serve defendants, the fact that the statute of limitations would bar refiling of plaintiff's claim if the time for service were not extended, and

---

grant extension for "good cause" where plaintiff failed to show that she exercised reasonable diligence in attempting to serve defendant). According to Plaintiff, it "cannot show [the required] diligence," and therefore it "concedes that it cannot meet the requirements of good cause." (Pl.'s Mem. 13-14.)

7

the evidence suggesting that plaintiff's cause of action was meritorious in affirming the Supreme

Court's decision to extend the time for service).[4]  In this analysis, "[n]o one factor is

determinative – the calculus of the court's decision is dependent on the competing interests of

the litigants and a clearly expressed desire by the Legislature that the interest[] of justice be

served."  *Leader*, 761 N.E.2d at 1025; *see also Brown*, 861 N.Y.S.2d at 878-79.  Also important

is the axiom that courts prefer that cases be decided on the merits.  *See Mead v. Singleman*, 806

N.Y.S.2d 783, 786 (App. Div. 2005) (allowing extension of time for service under Section 306-b

and noting that "public policy favors resolution of cases on the merits").

Considering all of the facts relevant to the instant case, the Court concludes that the

interest of justice is best served by granting Plaintiff's request to deem its service of Defendant

proper *nunc pro tunc*.  First, while the Court is in no position at the pre-discovery stage to fully

evaluate Plaintiff's claims, based on the allegations in Plaintiff's Complaint and the affidavits

supporting its motion (and after considering Defendant's affidavits and exhibits to the contrary),

Plaintiff has a potentially meritorious claim for breach of contract, as Plaintiff has alleged that

(1) Defendant agreed to purchase merchandise from Plaintiff, (2) Plaintiff manufactured that

merchandise specially for Defendant, (3) Defendant then canceled its order, and (4) Defendant's

cancellation caused Plaintiff damages of more than $1,750,000.  *See Abu-Aqlein*, 844 N.Y.S.2d

at 386 (affirming extension of time to effect service where the "verified complaint demonstrated

the merits of the action"); *Marinelli v. Sroka*, 800 N.Y.S.2d 283, 286 (Sup. Ct. 2005) (finding

that plaintiff sufficiently showed the merits of her claim where her verified complaint "set[] forth

---

[4] Courts may also look to "[f]ederal case law analysis of [R]ule 4(m) of the Federal Rules of Civil Procedure," as that analysis "provides a useful template in discussing some of the relevant factors for an interest of justice determination."  *Leader*, 761 N.E.2d at 1025.

in detail the basis for" her claim); *cf. Estate of Jervis v. Teachers Ins. & Annuity Ass'n*, 696 N.Y.S.2d 378, 381-82 (Sup. Ct. 1999) (declining to extend the time for service where plaintiff's complaint was "bare boned" and plaintiff failed to submit "any affidavits [with his] motion[] demonstrating the merits of [his] claims"). Such allegations state a claim for breach of contract. *See Roswell Capital Partners LLC v. Alternative Constr. Techs.*, No. 08-CV-10647, 2009 WL 222348, at *8 (S.D.N.Y. Jan. 30, 2009) ("The elements of a breach of contract claim under New York law are . . . (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004) (footnote omitted)).

　　Second, although Plaintiff timely commenced the action, the Parties agree that if the action is dismissed based on Plaintiff's untimely service, the statute of limitations would bar Plaintiff from refiling. Given that the allegations suggest that Plaintiff has a viable claim for breach of contract, "[t]he fact that the statute of limitations has run . . . favors . . . [P]laintiff." *Bunim v. City of New York*, No. 05-CV-1562, 2006 WL 2056386, at *3 (S.D.N.Y. July 21, 2006) (extending time for service under Federal Rule of Civil Procedure 4(m)); *see also Zapata v. City of New York*, 502 F.3d 192, 196-97 (2d Cir. 2007) (noting that extension may be particularly warranted where a combination of dismissal and the statute of limitations would effectively result in a dismissal with prejudice). "'The rationale for this principle is that dismissal under these circumstances would extinguish potentially meritorious claims without there being an opportunity to have them adjudicated on the merits.'" *Bunim*, 2006 WL 2056386, at *3 (quoting

*AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P.*, 197 F.R.D. 104, 109-10 (S.D.N.Y. 2000)).[5]

The Court recognizes that the absence of diligence by Plaintiff's original counsel, the fifteen-month delay in serving Defendant, and the fact that Defendant was not notified of this action until more than one year after the statute of limitations had run on Plaintiff's underlying claim ordinarily would weigh in favor of Defendant. *See Slate v. Schiavone Constr. Co.*, 829 N.E.2d 665, 665 (N.Y. 2005) (determining that extension was not warranted where plaintiff's attorney negligently delayed serving defendant for one and a half years past the expiration of the limitations period); *Erdogan v. Toothsavers Dental Servs., P.C.*, 869 N.Y.S.2d 82, 83 (App. Div. 2008) (dismissing on statute of limitations grounds where defendant was not served within limitations period and plaintiff gave no justification for failure). Yet, according to the affidavits submitted by Plaintiff, the commencement of this action did not occur under ordinary circumstances. In particular, Plaintiff has submitted affidavits suggesting that the untimely service of Defendant was beyond Plaintiff's control, as Bakshi, its earlier counsel in this action, misrepresented that Defendant had been timely served. (M. Blank Aff. ¶ 8; Lang Aff. ¶ 10.) Indeed, at least through the summer of 2007, Plaintiff had reason to believe that Bakshi was actively prosecuting the case as he represented such to Plaintiff and even requested documents from Plaintiff in the guise of using them in the lawsuit. (M. Blank Aff. ¶ 8; Lang Aff. ¶ 11.)

---

[5] While expiration of the statute of limitations is a factor that favors an extension, there is no automatic "'guarantee [of] an extension for every case that may be time-barred if refiled.'" *Bunim*, 2006 WL 2056386, at *3 (quoting *Alvarado v. Am. Freightways, Inc*., No. 04-CV-9536, 2005 WL 1467893, at *6 (S.D.N.Y. June 21, 2005)); *see also Astarita v. Urgo Butts & Co.*, No. 96-CV-6991, 1997 WL 317028, at *5 (S.D.N.Y. June 10, 1997) (noting that extension "is not mandated in every case where the statute of limitations concern is raised").

Such conduct by Plaintiff's former counsel is distinguishable from mere attorney negligence, which on its own may not be sufficient reason for extending the time for service. *Compare Yahney v. Wolforst*, No. 16106/2003, 2007 WL 2915604, at *2-3 (N.Y. Sup. Ct. Sept. 26, 2007) (granting extension in the interest of justice despite four-year delay in service where attorney misrepresented that he had timely served defendants), *with Moulden v. White*, 846 N.Y.S.2d 836, 837-38 (App. Div. 2007) (affirming finding that extension was not warranted where service was one day late due to "multiple law office failures"); *Meusa v. BMW Fin. Servs.*, 821 N.Y.S.2d 108, 109 (App. Div. 2006) (refusing to extend time for service where only explanation for two and a half year delay in effecting service was conclusory allegation of "law office failure").

In *Yahney*, the court granted an extension in the interest of justice notwithstanding the plaintiffs' four-year delay in serving the defendants. *See Yahney*, 2007 WL 2915604, at *2-3. As here, the *Yahney* plaintiffs were assured by their counsel that he had been duly prosecuting the case, but the plaintiffs discovered after the passage of four years that their summons and complaint had never been served on the defendants. *See id*. at *1. A few months after discovering their counsel's misrepresentations, the *Yahney* plaintiffs sought an order from the court extending their time to effect service. *See id*. at *2. The court granted the extension, attributing the long delay in effectuating service upon the defendants to attorney malfeasance and finding that an extension best served the interest of justice. *See id*. In making this finding, the court noted that plaintiffs had shown that (1) "failure to serve process was due to circumstances beyond their control," (2) their claims were meritorious, (3) the statute of limitations had expired on their negligence claims, and (4) they had promptly sought an extension after discovering the failure to timely effect service. *See id*. at *2-3.

While the Court acknowledges that Plaintiff, unlike the plaintiffs in *Yahney*, failed to make an application to extend the time for service until June 2, 2008 – more than seven months after discovering that Defendant had never been served, *see Shelkowitz v. Rainess*, 869 N.Y.S.2d 87, 88 (App. Div. 2008) (refusing to grant extension of time to serve defendant in the interest of justice where extension was only requested in "opposition to defendant's cross motion to dismiss, which was approximately 20 months after the filing of the action"), Plaintiff did serve the Summons and Notice on Defendant within weeks of discovering that it had not been served. *See Moy v. Time Warner Cable Co.*, No. 04-CV-2253, 2005 WL 1936338, at *4 (W.D. La. Aug. 5, 2005) (noting that the Court took "into consideration the fact that [p]laintiff's new counsel has diligently sought to remedy the errors of [p]laintiff's original counsel"); *cf. Carl v. City of Yonkers*, No. 04-CV-7031, 2008 WL 5272722, at *7 (S.D.N.Y. Dec. 18, 2008) (refusing to extend deadline for service under Rule 4(m) after deadline expired, where, in addition to failing to seek an extension of the time to serve the defendant, the plaintiff also failed to even attempt to serve the defendant after learning of the deficiencies in service). Moreover, though Plaintiff's tardiness in requesting an extension weighs in favor of Defendant, the Court finds that the totality of the factual circumstances still favors Plaintiff. *See Leader*, 761 N.E.2d at 1025 ("No one factor is determinative – the calculus of the court's decision is dependent on the competing interests of the litigants and a clearly expressed desire by the Legislature that the interest[] of justice be served."). In addition to the evidence that Plaintiff's failure to serve process was due to the apparent misconduct of its counsel and outside of its control, Plaintiff has also shown that it timely commenced the action within the statute of limitations, that its claims are potentially

meritorious, and that if the action is dismissed for untimely service, the statute of limitations would bar Plaintiff from refiling.

Furthermore, Defendant has failed to show that extending the time for service by deeming service proper *nunc pro tunc* will unfairly prejudice Defendant's ability to defend this case on the merits.  Defendant had constructive knowledge of Plaintiff's claim as early as February 8, 2005, when Plaintiff's then-counsel, E. Blank, contacted Defendant by letter detailing the factual circumstances underlying its claim and threatening to institute litigation.  While Defendant did not have actual notice that Plaintiff had filed its action until more than one year after the statute of limitations had run, preventing a defendant from "tak[ing] advantage of an expired statute of limitations is [not] itself a form of prejudice."  *AIG*, 197 F.R.D. at 111; *accord Brooklyn Hous. & Family Servs., Inc. v. Lynch*, 740 N.Y.S.2d 753, 763 (Sup. Ct. 2002) ("[T]he loss of [a statute of limitations defense] does not articulate the type of prejudice required to defeat a motion to extend the time to serve process under the interest of justice prong of [Section] 306-b.").

In addition, it is clear that Defendant has retained documentary evidence that may be used in this case, as Defendant has provided in its moving papers numerous documents relevant to Plaintiff's claims.  Indeed, the single form of prejudice that Defendant contends that it would encounter in defending its case is that it cannot produce witnesses with knowledge of these events, as the two relevant witnesses no longer work for Defendant.  (Def.'s Mem. of Law in Supp. of Mot. to Dismiss 9-10.)  Yet, Plaintiff has located at least one of these witnesses and plans to contact him to schedule his deposition.  (Pl.'s Aff. in Sur-Reply ¶¶ 3-4.)  As to the other witness, Plaintiff has produced evidence that suggests that as recently as July 2006, Defendant's

current CEO was in contact with that witness "to review the details of the time period." (Pl.'s Aff. in Sur-Reply Ex. A (email from Blake Nordstrom to Pierre Lang).) Accordingly, the Court finds that Defendant has failed to demonstrate that the untimely service has unfairly prejudiced its ability to mount a defense to Plaintiff's claim. *See Przespolewski v. Elderwood Health Care at Linwood*, 865 N.Y.S.2d 462, 463 (App. Div. 2008) (affirming extension where "defendants failed to demonstrate that they were prejudiced by the delay in service"); *Brooklyn Hous.*, 740 N.Y.S.2d at 762 (granting extension of time for service where totality of the circumstances, including the fact that defendants had "not demonstrated how they would be prejudiced by the granting of" an extension, weighed in favor of plaintiff). While Defendant's failure to show prejudice does not on its own dictate an extension of the time for service, *see Pecker Iron Works, Inc. v. Namasco Corp.*, 830 N.Y.S.2d 548, 548-49 (App. Div. 2007) (affirming denial of extension of time for service despite defendant's failure to claim prejudice where, inter alia, plaintiff failed to offer an explanation for its long delay in serving defendant), the Court nonetheless finds, after considering all the competing circumstances in this case, that Defendant's failure to show prejudice weighs in favor of granting the extension.

While the delay in serving Defendant was undisputedly substantial, the Court finds that it is "attributable solely to egregious conduct on the part of the [P]laintiff['s] former counsel, [and] th[e] [C]ourt will not impute [that conduct] to the [P]laintiff[]." *Yahney*, 2007 WL 2915604, at *3. Based on the Court's review of "the factual setting of the case and a balancing of the competing interests presented by the parties," *Leader*, 761 N.E.2d at 1025, the Court concludes that the interest of justice favors granting Plaintiff's request to deem service timely *nunc pro tunc*.

### III. Conclusion

For the reasons stated above, Defendant's Motion to Dismiss is denied, and Plaintiff's cross-motion to deem service proper, *nunc pro tunc*, is granted. The Clerk of the Court is respectfully directed to terminate the pending motion (Dkt. No. 17).

SO ORDERED.

Dated:   March 31, 2009
         White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

*Service List (By ECF)*:
Matthew Alan Blank, Esq.
West Nyack, NY
*Counsel for Plaintiff*

Allen J. Kozupsky, Esq.
Somers, NY
*Counsel for Plaintiff*

Marc David Youngelson, Esq.
Sills Cummis & Gross, P.C.,
Newark, NJ
*Counsel for Defendant*

Mark Steven Olinsky, Esq.
Sills Cummis & Gross, P.C.,
Newark, NJ
*Counsel for Defendant*